V. Paul MacDonald, Respondent, v O. W. Clinger, Appellant.

Fourth Department, January 22, 1982

APPEARANCES OF COUNSEL

*Harris, Beach, Wilcox, Rubin & Levey* (*Robert E. Skiver* and *Edward H. Fox* of counsel), for appellant.

*William J. MacDonald* for respondent.

**OPINION OF THE COURT**

Denman, J.

We here consider whether a psychiatrist must respond in damages to his former patient for disclosure of personal information learned during the course of treatment and, if he must, on what theory of recovery the action may be maintained. We hold that such wrongful disclosure is a breach of the fiduciary duty of confidentiality and gives rise to a cause of action sounding in tort.

The complaint alleges that during two extended courses of treatment with defendant, a psychiatrist, plaintiff revealed intimate details about himself which defendant later divulged to plaintiff's wife without justification and without consent. As a consequence of such disclosure, plaintiff alleges that his marriage deteriorated, that he lost his job, that he suffered financial difficulty and that he was caused such severe emotional distress that he required

further psychiatric treatment. The complaint set forth three causes of action: breach of an implied contract; breach of confidence in violation of public policy; and breach of the right of privacy guaranteed by article 5 of the Civil Rights Law. Defendant moved to dismiss for failure to state a cause of action, asserting that there was in reality only one theory of recovery, that of breach of confidence, and that such action could not be maintained against him because his disclosure to plaintiff's wife was justified. The court dismissed the third cause of action but denied the motion with respect to the first two causes of action and this appeal ensued.[*]

Research reveals few cases in American jurisprudence which treat the doctor-patient privilege in this context. That is undoubtedly due to the fact that the confidentiality of the relationship is a cardinal rule of the medical profession, faithfully adhered to in most instances, and thus has come to be justifiably relied upon by patients seeking advice and treatment. This physician-patient relationship is contractual in nature, whereby the physician, in agreeing to administer to the patient, impliedly covenants that the disclosures necessary to diagnosis and treatment of the patient's mental or physical condition will be kept in confidence.

Examination of cases which have addressed this problem makes it apparent that courts have immediately recognized a legally compensable injury in such wrongful disclosure based on a variety of grounds for recovery: public policy; right to privacy; breach of contract; breach of fiduciary duty. (See, generally, Ann., 20 ALR3d 1109; 61 Am Jur 2d, Physicians, Surgeons and Other Healers, § 169). As the Supreme Court of Washington stated in *Smith v Driscoll* (94 Wash 441, 442): "Neither is it necessary to pursue at length the inquiry of whether a cause of action lies in favor of a patient against a physician for wrongfully divulging confidential communications. For the purposes of what we shall say, it will be assumed that, for so palpable a wrong, the law provides a remedy."

---

* No cross appeal was taken from dismissal of plaintiff's third cause of action and plaintiff concedes that he has not met the requirement of article 5 of the Civil Rights Law.

An excellent and carefully researched opinion exploring the legal ramifications of this confidentiality is *Doe v Roe* (93 Misc 2d 201), a decision after a nonjury trial in which plaintiff sought injunctive relief and damages because of the verbatim publication by her former psychiatrist of extremely personal details of her life revealed during years of psychoanalysis. The court considered several proposed theories of recovery, including violation of public policy and breach of privacy rights. We agree with the court's observation that the several statutes and regulations requiring physicians to protect the confidentiality of information gained during treatment are clear evidence of the public policy of New York (see, e.g., CPLR 4504, subd [a]; 4507; Education Law, § 6509, subd [9]; 8 NYCRR 29.1 [b] [8]; Mental Hygiene Law, § 33.13, subds [c], [d]; Public Health Law, § 2803-c, subd 3, par f; § 2805-g, subd 3), but that there is a more appropriate theory of recovery than one rooted in public policy.

Neither do we believe that an action for breach of the right of privacy may be maintained (see *Flores v Mosler Safe Co.*, 7 NY2d 276; *Roberson v Rochester Folding Box Co.*, 171 NY 538) despite some current predictions to the contrary (see, e.g., *Birnbaum v United States*, 588 F2d 319, 323-326; *Spock v United States*, 464 F Supp 510, 514-516; *Doe v Roe*, 42 AD2d 559, 560, affd 33 NY2d 902; but see *Wojtowicz v Delacorte Press*, 43 NY2d 858).

Another instructive discussion of the legal consequences emanating from the physician-patient relationship is found in *Hammonds v Aetna Cas. & Sur. Co.* (243 F Supp 793), in which plaintiff sought damages from an insurance carrier for procuring his medical records from his physician by falsely representing that plaintiff was suing the physician for malpractice. Looking to Ohio law, the court found that such disclosure was contrary to the public policy of the State, evidence of which could be found in the medical code of ethics; the Ohio statute on privileged communications; and the Ohio licensing statute which prohibited betrayal of confidential information.

Attempting to fashion a remedy based on a traditional legal theory, the court discussed the contractual nature of the relationship: "Any time a doctor undertakes the treat-

ment of a patient, and the consensual relationship of physician and patient is established, two jural obligations * * * are simultaneously assumed by the doctor. Doctor and patient enter into a simple contract, the patient hoping that he will be cured and the doctor optimistically assuming that he will be compensated. As an implied condition of that contract, this Court is of the opinion that the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission. Almost every member of the public is aware of the promise of discretion contained in the Hippocratic Oath, and every patient has a right to rely upon this warranty of silence. The promise of secrecy is as much an express warranty as the advertisement of a commercial entrepreneur. Consequently, when a doctor breaches his duty of secrecy, he is in violation of part of his obligations under the contract." (*Hammonds v Aetna Cas. & Sur. Co.*, *supra*, p 801.) The court then determined that from that contractual relationship arose a fiduciary obligation that confidences communicated by a patient should be held as a trust (*Hammonds v Aetna Cas. & Sur. Co., supra*, p 803).

That position was generally adopted by the court in *Doe v Roe* (93 Misc 2d 201, 210-211, *supra*), thus:

"I too find that a physician, who enters into an agreement with a patient to provide medical attention, impliedly covenants to keep in confidence all disclosures made by the patient concerning the patient's physical or mental condition as well as all matters discovered by the physician in the course of examination or treatment. This is particularly and necessarily true of the psychiatric relationship, for in the dynamics of psychotherapy '[t]he patient is called upon to discuss in a candid and frank manner personal material of the most intimate and disturbing nature * * * He is expected to bring up all manner of socially unacceptable instincts and urges, immature wishes, perverse sexual thoughts — in short, the unspeakable, the unthinkable, the repressed. To speak of such things to another human requires an atmosphere of unusual trust, confidence and tolerance. * * * Patients will be helped only if they can form a trusting relationship with

the psychiatrist.' (Heller, Some Comments to Lawyers on the Practice of Psychiatry, 30 Temple L Rev 401, 405-406).

"There can be little doubt that under the law of the State of New York and in a proper case, the contract of private parties to retain in confidence matter which should be kept in confidence will be enforced by injunction and compensated in damages (*Karpinski v Ingrasci,* 28 NY2d 45; *Bates Chevrolet Corp. v Haven Chevrolet,* 13 AD2d 27, 16 AD2d 917, affd without opn 13 NY2d 644; *Millet v Slocum,* 4 AD2d 528, affd without opn 5 NY2d 734; *Lynch v Bailey,* 300 NY 615; *Clark Paper & Mfg. Co. v Stenacher,* 236 NY 312)." (See, also, *Doe v Roe,* 42 AD2d 559, *supra.*)

It is obvious then that this relationship gives rise to an implied covenant which, when breached, is actionable. If plaintiff's recovery were limited to an action for breach of contract, however, he would generally be limited to economic loss flowing directly from the breach (5 Corbin, Contracts, § 1019, at pp 113-115) and would thus be precluded from recovering for mental distress, loss of his employment and the deterioration of his marriage. We believe that the relationship contemplates an additional duty springing from but extraneous to the contract and that the breach of such duty is actionable as a tort. Indeed, an action in tort for a breach of a duty of confidentiality and trust has long been acknowledged in the courts of this State. In *Rich v New York Cent. & Hudson Riv. R.R. Co.* (87 NY 382) the court recognized that there was no clear line of demarcation between torts and breaches of contract (see, also, *Greco v Kresge Co.,* 277 NY 26, 33-34; *Busch v Interborough Rapid Tr. Co.,* 187 NY 388). In its explanation of the relationship between the two, the court in *Rich* stated as follows (p 390): "Ordinarily, the essence of a tort consists in the violation of some duty due to an individual, which duty is a thing different from the mere contract obligation. When such duty grows out of relations of trust and confidence, as that of the agent to his principal or the lawyer to his client, the ground of the duty is apparent, and the tort is, in general, easily separable from the mere breach of contract".

Only recently we had occasion to reaffirm that concept in *Charles v Onondaga Community Coll.* (69 AD2d 144, 146),

declaring "A duty extraneous to the contract often exists where the contract results in or accompanies some relation between the parties out of which arises a duty of affirmative care as in cases involving bailor and bailee, public carrier and passenger, innkeeper and guest, lawyer and client, or principal and agent (see *Albemarle Theatre v Bayberry Realty Corp.* [27 AD2d 172]; Prosser, Law of Torts [4th ed], pp 613-618)".

The relationship of the parties here was one of trust and confidence out of which sprang a duty not to disclose. Defendant's breach was not merely a broken contractual promise but a violation of a fiduciary responsibility to plaintiff implicit in and essential to the doctor-patient relation.

Such duty, however, is not absolute, and its breach is actionable only if it is wrongful, that is to say, without justification or excuse. Although public policy favors the confidentiality described herein, there is a countervailing public interest to which it must yield in appropriate circumstances. Thus where a patient may be a danger to himself or others (see, e.g., *Tarasoff v Regents of Univ. of Cal.,* 17 Cal 3d 425; *Berry v Moench,* 8 Utah 2d 191; *Simonsen v Swenson,* 104 Neb 224), a physician is required to disclose to the extent necessary to protect a threatened interest. "The protective privilege ends where the public peril begins" (*Tarasoff v Regents of Univ. of Cal., supra,* at p 442).

Contending that disclosure here was justified because it was made only to plaintiff's wife, defendant relies on *Curry v Corn* (52 Misc 2d 1035) in support of that position. In that case the court found justifiable the disclosure of information to a husband by his wife's doctor who knew the information would be used by the husband in a pending matrimonial action. Even overlooking the shortcomings of that determination, it was based at least in part upon the husband's status as head of the marital household and responsible for his wife's debts. It is thus inapplicable here where it is the wife who sought disclosure and is outmoded in any event (see General Obligations Law, § 3-301, subd 1; § 5-311).

Although the disclosure of medical information to a spouse may be justified under some circumstances, a more stringent standard should apply with respect to psychiatric information. One spouse often seeks counselling concerning personal problems that may affect the marital relationship. To permit disclosure to the other spouse in the absence of an overriding concern would deter the one in need from obtaining the help required. Disclosure of confidential information by a psychiatrist to a spouse will be justified whenever there is a danger to the patient, the spouse or another person; otherwise information should not be disclosed without authorization. Justification or excuse will depend upon a showing of circumstances and competing interests which support the need to disclose (cf. *Berry v Moench,* 8 Utah 2d 191, *supra*). Because such showing is a matter of affirmative defense, defendant is not entitled to dismissal of the action.

The order should be modified to dismiss the cause of action for breach of contract and as modified should be affirmed.

SIMONS, J. P. (concurring). Plaintiff seeks in this action to recover from defendant, his psychiatrist, for defendant's allegedly unjustified and damaging disclosure of confidential information about plaintiff's condition to plaintiff's wife. The members of the court are agreed that he may do so and that the action sounds in tort. We are divided about the nature of the cause of action, however, the majority believing it to be a "breach of fiduciary duty to confidentiality", while I believe the cause of action to be for malpractice. The difference is one of substance, for the majority hold plaintiff may recover if he submits evidence of the professional relationship, the disclosure of confidential information and damages. Once plaintiff does so, it is for the doctor to offer evidence of justification and for the jury to weigh it. Plaintiff's right to recover, as they see it, rests on proof of an unauthorized disclosure, the breach of an implied promise to hold confidential information received during treatment. In my view, plaintiff's right to recover must rest upon his proof that the disclosure was wrongful or unjustified.

When a physician undertakes treatment of a patient, he impliedly represents that he possesses, and the law places upon him the duty of possessing, the reasonable degree of learning and skill possessed by physicians in the community generally. Culpable fault exists if the physician fails to live up to this standard (see *Pike v Honsinger,* 155 NY 201, 209). Confidentiality, particularly in the case of a psychiatrist, is a significant and important aspect of medical treatment and a promise of nondisclosure may readily be implied from the physician-patient relationship. Thus, the relationship has elements of a contract, as plaintiff's first cause of action suggests, but commonly malpractice is a tort action predicated upon the physician's violation of his duty to supply the quality of care promised when he undertook to treat the patient. The physician's duty to honor this implied promise of confidentiality is merely another aspect of the treatment rendered and should be judged similarly.

The majority, by taking the cause of action out of the malpractice area, hold that all unauthorized disclosures, prima facie, violate reasonable medical care. The disclosure may be excused only if defendant proves that it was precipitated by danger to the patient, spouse or another. No other disclosure is permissible, apparently, even if mandated by statute (see, e.g., Public Health Law, § 3372; Penal Law, § 265.25).

But further than that, the established rules of professional malpractice base liability upon an objective standard measured by the general quality of care of the professional community (see *Toth v Community Hosp. at Glen Cove,* 22 NY2d 255, 262). The rule advanced by the majority permits the standard of care in unauthorized disclosure cases to be set by the jury. Thus, in every case of disclosure, the physician is exposed to the danger of a damage verdict resting upon the jury's subjective view of his explanation of his conduct even if it was in accordance with accepted medical practice. Thus, a jury disbelieving a physician's evaluation that a patient is assaultive or suicidal may hold the physician liable for the most limited but necessary disclosure relating to such commonplace matters as advice

to ensure that the patient takes prescribed medication or avoids stressful situations.

In short, to avoid a nonsuit, a plaintiff should submit evidence of more than an unauthorized disclosure by the physician. There should be evidence that the physician has engaged in the unskilled practice of medicine. The relationship between the parties, after all, is medical, not fiduciary. The doctor is hired to treat the patient and his liability, if any, should be predicated upon his failure to do so properly.

The majority rely on *Doe v Roe* (93 Misc 2d 201, *supra*), but the facts of that case are not analogous. In *Doe* the psychiatrist published a book containing confidential information concerning a former patient. This was a commercial use of the information, clearly unrelated to the care of the patient and antagonistic to her best interests. The evidence at trial may establish that the disclosure here was similarly unrelated to plaintiff's treatment, but it was made in a medical setting to a member of plaintiff's family and defendant's conduct should be judged, therefore, by malpractice standards.

Plaintiff should submit evidence that defendant did not exercise reasonable care in disclosing the confidential information to plaintiff's wife and the legal rules governing professional malpractice actions generally should be applied to determine liability at the trial.

CALLAHAN, DOERR and MOULE, JJ., concur with DENMAN, J.; SIMONS, J. P., concurs in a separate opinion.

Order modified, and as modified affirmed, with costs to defendant, in accordance with opinion by DENMAN, J.