Lawrence J. DEUTSCH, Plaintiff,

v.

**HEALTH INSURANCE PLAN OF GREATER NEW YORK,**
Defendant.

**No. 83 CIV 1279 (LBS).**

United States District Court,
S.D. New York.

Oct. 28, 1983.

Lord, Day & Lord, New York City, for plaintiff; John D. Gordan, III, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for defendant; Edward R. Korman, Madelaine R. Berg, New York City, of counsel.

## OPINION ON PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S COUNTERCLAIM

SAND, District Judge.

Plaintiff Lawrence J. Deutsch moves under Fed.R.Civ.P. 12 to dismiss a counterclaim asserted by defendant Health Insurance Plan of Greater New York ("HIP") in defendant's July 25, 1983 further amended answer to plaintiff's amended complaint of June 24, 1983 and, under Fed.R.Civ.P. 11, for costs and attorneys' fees in preparing this motion. For reasons set forth below, plaintiff's motion to strike HIP's counterclaim is granted, while his motion for attorney's fees is denied.

### Facts

A fuller statement of the facts of this case is to be found in this Court's opinion on defendant's motion for summary judgment, issued this same day. Insofar as they are relevant to this opinion, the undisputed facts of this case are as follows.

Plaintiff's original complaint in this case alleged that defendant had breached an exclusive contract under which plaintiff was to receive referrals for audiological examinations from all HIP affiliated medical groups. By leave of the Court, plaintiff amended his complaint on June 24, 1983 to allege in addition fraud in the inducement with respect to this contract.

On July 5, 1983, defendant filed an answer to the amended complaint containing the following affirmative defense.

> The damages plaintiff seeks to recover in this action would have accrued to him, absent the alleged breach, only as a result of a pattern of conduct which would have violated the laws and public policy of the State of New York. Therefore, the plaintiff is not entitled to any recovery even assuming, arguendo, that the Contract was breached.

(Gordon Affidavit, Exhibit 3, ¶ 27). On the same day that this amended answer was filed, counsel for defendant apparently informed plaintiff's attorney orally that this affirmative defense was based upon § 6509–a of the New York Education Law,

which prohibits fee splitting by licensed physicians.

On July 25, 1983, defendant filed an amended answer to plaintiff's amended complaint containing a counterclaim for damages based upon plaintiff's allegedly illegal fee-splitting arrangements with various medical groups. Apparently, Dr. Deutsch referred HIP patients to other audiologists for testing and would prepare written reports based upon their test results. Of the $32.00 fee HIP paid to him for each patient, Dr. Deutsch would keep $12.00 for himself and forward the remaining $20.00 to the entities that actually performed the tests. HIP's counterclaim seeks recovery of $12.00 the portion of the $32.00 fee it paid Dr. Deutsch for each patient.

## Discussion

1. *The timeliness of defendant's counterclaim.*

Plaintiff contends that defendant's counterclaim was improperly asserted because, under Fed.R.Civ.P. 13(f), a counterclaim initially omitted from a pleading may only later be interposed with leave of the Court. *Mercantile Trust Co. N.A. v. Inland Marine Products Corp.,* 542 F.2d 1010, 1012 n. 5 (8th Cir.1976); *Stoner v. Terranella,* 372 F.2d 89, 91 (6th Cir.1967); *Exchange National Bank of Chicago v. Abramson,* 45 F.R.D. 97, 105 (D.Minn.1968); *Goldlawr, Inc. v. Shubert,* 268 F.Supp. 965, 971 (E.D. Pa.1967).

Defendant, however, argues that the provisions of 13(f) must be read in conjunction with Fed.R.Civ.P. 15(a), which allows any pleading to be amended as of right before a responsive pleading is served, or, if no responsive pleading is allowed, within 20 days. *A.J. Industries, Inc. v. U.S. District Court,* 503 F.2d 384, 388 (9th Cir.1974); Wright & Miller, 6 *Federal Practice and Procedure* § 1430 at 158–59 (1971). Here, defendant's amended answer, which inter-

posed the counterclaim, was filed exactly 20 days after defendant's first answer. Defendant distinguishes the authorities cited by plaintiff in that, with one exception, they involved the question whether counterclaims barred by the statute of limitations could be saved by "relation back" to the original pleading under Rule 15(c)—an issue not present here.

■ We agree with the proposition asserted by defendants—*i.e.* that Rule 13(f) requires leave of the Court to add omitted counterclaims only where 15(a) does not allow an amendment as a matter of right. There is no apparent reason that a pleading filed within the time periods prescribed in 15(a) should require leave of the court merely because it contains a counterclaim. We believe that the requirements of 13(f) are applicable only when the counterclaim is interposed outside of the 15(a) time periods, *i.e.*, after a responsive pleading is filed or more than 20 days after a pleading to which no responsive pleading is permitted.

■ We also agree with plaintiff that the automatic amendment provisions of 15(a) do not apply to amendments of amended pleadings. The drafters of the Federal Rules precluded any suggestion to the contrary by providing in 15(a) that "[a] party may amend his pleading *once* as a matter of course." (emphasis supplied).[1]

■ Defendant's right to amend its July 5 answer therefore turns on the question of whether that answer should be deemed a pleading or an "amended pleading" insofar as that distinction is relevant to Rule 15(a). We believe that an answer to an amended complaint is not itself an amended pleading. A defendant filing such an answer is not amending his original answer, he is instead responding for the first time to new issues raised in the plaintiff's amended pleading. An amended complaint represents a plaintiff's second bite at the apple, and a defendant should be accorded the same privilege.[2]

---

1. Were the law otherwise, a defendant could forestall an action indefinitely by repeatedly interposing a new amended answer within succeeding 20 day periods ad infinitum.

2. Plaintiff points out that he was able to file his amended complaint only after obtaining leave of the Court with respect to the specific amendments he proposed to include. He argues that the reductio ad adsurdum of defendant's position is that he would also be allowed to re-

■ Finally, even if the above analysis is incorrect, the Court has discretion to allow an omitted counterclaim at any time, and leading authorities favor the view that leave to do so should be freely granted. 6 Wright & Miller, *Federal Practice and Procedure* § 1430 at 159. See *Midwest Pipe Fabricators v. Davis Specialties*, 92 F.R.D. 380, 381 (E.D.N.Y.1981). Presumably this liberality should also apply where, as here, leave of the court would need to be sought *nunc pro tunc*.[3]

### 2. *HIP's right of action under § 6509–a.*

HIP's counterclaim is predicated upon § 6509–a of New York's Education Law (McKinney 1972) (Pocket Part 1982–83). That statute, in relevant part, provides that a health professional is subject to various penalties if such health professional

has directly or indirectly requested, received or participated in the division, transference, assignment, rebate, splitting or refunding of a fee for, or has directly requested, received or profited by means of a credit or other valuable consideration as a commission, discount or gratuity in connection with the furnishing of professional care, or service . . .

*Id.* The issue presently before the court is whether a private litigant, such as HIP, may maintain a civil action based on this provision.[4]

■ In a very recent case, the New York Court of Appeals has set forth the test for determining whether a New York criminal statute establishes a private cause of action. *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983). The question turns "to a great extent on the purview of the legislature in the particular statute and the language they have employed." *Id.* at 323, 464 N.Y.S.2d at 715, 451 N.E.2d at 462. A court should inquire "in the first instance . . . whether plaintiff is 'one of the class for whose especial benefit the statute was enacted.'" *Id.* at 325, 464 N.Y.S.2d at 716, 451 N.E.2d at 463. Other relevant factors include

what indications there are in the statute or its legislative history of an intent to create (or conversely to deny) such a remedy and, most importantly, the consistency of doing so with the purposes underlying the legislative scheme." *Id.*

Section 6509–a, of course, contains no express grant of a private right of action, although this fact is not dispositive of the question. See, *e.g.*, *Lane v. Marine Midland Bank*, 112 Misc. 200, 201, 446 N.Y. S.2d 873, 874 (Sup.Ct., Erie County 1982). Resolution of the issue therefore turns upon an analysis of the statute's history and underlying purposes.

Defendant contends that the concern of the legislature in enacting 6509–a was that fee-splitting by physicians results in inflated medical costs. Since HIP allegedly paid higher prices as the result of Dr. Deutsch's alleged fee splitting, HIP is therefore "one of the class for whose especial benefit the statute was enacted."

■ Our review of the legislative history of 6509–a convinces us that, as the plaintiff contends, the statute was intended to regulate medical facilities supported by New York State Medicaid assistance funds. It was not primarily meant to benefit consumers of medical services generally or private

---

amend his amended complaint within the time periods of 15(a) despite the specific restrictions placed upon him by the Court. (Plaintiff's Reply Memorandum at ___). The answer to this contention is that plaintiff's amended complaint, unlike defendant's initial answer thereto, is an amended pleading and therefore not subject to the amendment provisions of 15(a).

**3.** Admittedly, this case might present one of those rare situations where leave of the Court, were it required, might be properly withheld. Defendant's amended answer to the amended complaint was filed after the close of discovery. However, a more equitable result might be to reopen discovery with respect to the counterclaim rather than to preclude the defendant from raising the claim.

**4.** Plaintiff argues that his arrangements with testing audiologists did not violate 6509–a because, inter alia, the other audiologists were his partners and the referrals thus fell within the statutory exclusions. We do not reach this question, since it is unnecessary to our disposition of this motion.

health maintenance organizations, such as HIP.

The New York legislature enacted 6509–a in 1977, along with many other provisions, under Chapter 770 of the New York Session Laws. The introductory paragraph to Chapter 770 recites that it is

An Act to amend the public health law, the social services law, and the education law, in relation to providing *for the regulation of shared health facilities,* and for the deterence [sic] of professional misconduct in relation thereto.

1977 N.Y. Laws c. 770 (emphasis supplied).

A "shared health facility" is defined as an arrangement for four or more medical practitioners receiving state funds for the medical assistance of needy persons. *Id.* at § 1.

According to Assemblyman Alan Hevesi, one of the sponsors of the bill in the New York Assembly, the legislation was enacted in response to abuses in "so-called 'Medicaid mills.'" Mr. Heves reported that such facilities

are characterized by the existence of professionals in individual practice at the same locations, sharing certain common areas and resources. Many of these facilities are legitimate and provide good care, not unlike a professional building. However, some practitioners have been known *to make unnecessary referrals to each other, to engage in fee-splitting arrangements,* to join with a [sic] owner or operator in an agreement to base rentals on a percentage of gross billings, and to engage in other unscrupulous activities resulting in overutilization of services, inadequate, dangerous and unethical care, *and in greater governmental expenditures.*

1977 *New York State Legislative Annual* c. 770 at 255 (emphasis supplied). The purpose, then, of Chapter 770 was "to regulate and control practitioners and facilities engaging in these practices without penalizing or affecting the many legitimate practitioners. It would assist to firmly isolate

*Medicaid abusers." Id.* (emphasis supplied).

▆ Since both parties agree that Dr. Deutsch's practice does not meet the statutory definition of a state-funded "shared health facility," it is plain that his patients (and their insurance companies) do not belong to "the class for whose especial benefit the statute was enacted." *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 325, 464 N.Y.S.2d 712, 716, 451 N.E.2d 459, 463 (1983). More fundamentally, creating remedies for a private litigant such as HIP was not within "the purview of the legislature" in enacting 6509–a. *Id.* at 323, 464 N.Y.S.2d at 715, 451 N.E.2d at 462. For this Court to hold otherwise would therefore not be consistent "with the purposes underlying the legislative scheme." *Id.* at 325, 464 N.Y.S.2d at 716, 451 N.E.2d at 463.

Two New York cases lend some additional support to our interpretation of § 6509–a. In *MacDonald v. Clinger,* 84 A.D.2d 482, 446 N.Y.S.2d 801 (4th Dept.1982) and *Doe v. Roe,* 93 Misc.2d 201, 400 N.Y.S.2d 668 (Sup.Ct. N.Y. County 1977), a patient was allowed to maintain an action against a psychiatrist for disclosing confidential information. Despite the fact that such conduct was proscribed under regulations issued pursuant to § 6509 of the Education Law, both courts predicated their findings on common law principles. Indeed, the court in *Doe* acknowledged that no such common law right had ever been expressly recognized in New York. 400 N.Y.S.2d at 672. Presumably, had the *MacDonald* and *Doe* courts believed that 6509 established a private right of action, they would have premised their decisions on that basis rather than creating a new tort.[5]

It is true, as defendant points out, that *Doe* and *MacDonald* involved 6509, rather than 6509–a, as in this case. However, it would be anomalous to find an implied right of action under one provision and not the other, especially since the fee-splitting

---

5. Indeed, the Court in *Doe,* after adverting to arguments that there was no private cause of action under 6509, took pains to find a "theor(y)

on which liability may be predicated other than violation of the ... disciplinary statute [Ed.L. 6509 et seq.]" 400 N.Y.S.2d at 673.

proscriptions of 6509–a are, to some extent, duplicative of earlier, similar prohibitions enacted under 6509.[6]

 Although we believe that defendant's counterclaim must be dismissed, we do not find that it was interposed maliciously or frivolously. Hence, plaintiff's motion for attorney's fees pursuant to Fed. R.Civ.P. 11 is hereby denied.

SO ORDERED.

---

**6.** Subsection 9 of 6509 prohibits "unprofessional conduct, as defined by the board of regents in its rules or by the commissioner in regulations approved by the board of regents." Under this legislative grant of authority, the New York State Board of Regents promulgated Rule 29.-1(b)(3) which defines "unprofessional conduct" to include

directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services.

8 N.Y.C.R.R. § 29.1(b)(3).