OPINION OF THE COURT
David O. Boehm, J.
On April 17, 1987, in a waiting room at Strong Memorial *771 Hospital infectious disease unit, which is involved with AIDS (Acquired Immunodeficiency Syndrome) research and treatment, plaintiff observed two people, who he later learned were defendants, Dena Burres and Reed Hoffmann. Burres is a reporter for the Democrat & Chronicle, a newspaper published by Gannett Newspapers for circulation in the Rochester area, and Hoffmann is a photographer for the same newspaper.
Upon entering the examination room plaintiff was asked by defendant, Carol Williams, a project nurse for the infectious disease unit, if he would permit Hoffmann to take his photograph. At first plaintiff declined, but after assurances by both Williams and defendant, Dr. William Valenti, a physician with the infectious disease unit, that a silhouette picture from a back angle would be taken and he would not be recognizable, plaintiff consented.
Since the motion brought by defendants seeks to dismiss the complaint for failure to state a cause of action, all of its allegations will be deemed to be true. Therefore, it is accepted that Burres and Hoffmann did not inform plaintiff that they were associated with the Democrat & Chronicle, and did not tell him the purpose of the photograph. Since Strong is a university hospital, affiliated with the University of Rochester, plaintiff believed the photograph was only for internal or research purposes.
However, two days later, on April 19, 1987, the photograph was published on the front page of the local section of the Sunday edition of the Democrat & Chronicle as part of an article entitled "Aura of urgency cloaks UR’s research on AIDS.” Beneath the photograph was the caption, "Dr. William Valenti of Strong Memorial Hospital’s infectious disease unit conducts an examination of a patient. Valenti’s chief responsibility is caring for AIDS patients.” The article reported that Strong was to receive Federal grants of more than $9,000,000 for research projects related to AIDS, as part of a nationwide research program involving 19 medical centers and coordinated by the National Health Institute. Plaintiff was neither identified nor referred to in the article.
The photograph shows plaintiff in silhouette taken from a back angle. Plaintiff claims he is identifiable because of various physical characteristics, including his receding hairline, high forehead, neatly trimmed sideburns, high cheekbones, ear, deep-set eye socket, and his shoulder which indicated a medium build, as well as his clothing and style of dress. *772 Plaintiff first learned of the publication of the photograph when a family friend asked him if it was his picture. Plaintiff alleges that the publication in its entirety strongly implies that he was diagnosed as having AIDS, but he asserts, however, that he is not, and was not at the time of the publication, suffering from AIDS. He admits to having been diagnosed as HIV (Human Immunodeficiency Virus) positive, that is, infected with the virus responsible for AIDS.
Plaintiff claims that the publication has caused him and his family to suffer much stress and turmoil. He was unable to go out into public, and received a medical excuse from Valenti exempting him from attending a job training program. The fear of venturing outside his home has caused him to drastically alter his everyday routine and social habits. Plaintiff subsequently sought advice and counseling from a counselor at AIDS Rochester, who advised him to get professional intensive counseling, which he is now receiving, and anticipates needing for an extended period of time.
In this action against the defendants plaintiff sues for invasion of privacy and breach of the physician-patient privilege against Strong, Valenti and Williams, and for libel and invasion of privacy against Burres, Hoffmann and the Democrat & Chronicle. Defendants moved to dismiss the complaint for failure to state a cause of action. The Democrat & Chronicle also moved to dismiss on the ground that it is not a legal entity subject to suit, but merely the name of a newspaper owned by Gannett Company, Inc.
Prior to the return date of these motions plaintiff served an amended complaint substituting Gannett Newspaper and Company in the place of Democrat & Chronicle, and asserting separate causes of action for breach of the physician-patient privilege against Strong and Valenti, and a conspiracy cause of action against all defendants. At oral argument the parties agreed that the court could consider the motions to dismiss as attacking both the original and amended complaints (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:65, at 70; but see, Lipary v Posner, 96 Misc 2d 578). Following argument of the motions the claims against the Democrat & Chronicle, Gannett, Burres and Hoffmann were dismissed and decision was reserved on the motion by the medical defendants.
The third cause of action in both the original and amended complaints seeks damages for invasion of privacy, and is *773 asserted against Strong, Williams and Valenti. It has long been recognized by courts in this State that there is no common-law action for invasion of privacy arising from the unauthorized publication of one’s picture (Roberson v Rochester Folding Box Co., 171 NY 538). The only available remedy is that created by sections 50 and 51 of the Civil Rights Law (see, Freihofer v Hearst Corp., 65 NY2d 135, 140). The protection afforded by the Civil Rights Law is of limited scope, since it provides a remedy only for commercial exploitation of an individual’s name, portrait or picture without the prior written consent of that person (Freihofer v Hearst Corp., supra, at 140).
However, a " 'picture illustrating an article on a matter of public interest is not considered used for the purpose of trade or advertising within the prohibition of the statute * * * unless it has no real relationship to the article * * * or unless the article is an advertisement in disguise’ ” (Murray v New York Mag. Co., 27 NY2d 406, 409, quoting Dallesandro v Holt & Co., 4 AD2d 470, 471, appeal dismissed 7 NY2d 735; see also, Arrington v New York Times Co., 55 NY2d 433).
Plaintiff argues that the article in this case is an advertisement in disguise because its primary purpose was to draw attention to the research program and thereby induce the participation of volunteers. "Use for 'advertising purposes’ is defined as solicitation for patronage, intended to promote the sale of some collateral commodity or service” (Davis v High Socy. Mag., 90 AD2d 374, 379). The mere mention that volunteers will be needed for vaccine testing simply does not fall within this definition.
Furthermore, even if it is conceded that the article is an advertisement in disguise, there is no claim that the medical defendants, as opposed to the newspaper and its employees, made any use of the photograph (see, De Lesline v State of New York, 91 AD2d 785, 786).
Section 51 of the Civil Rights Law authorizes the maintenance of an invasion of privacy action only against a person who "used” plaintiff’s photograph. Although the amended complaint alleges that Williams and Valenti encouraged plaintiff to have his photograph taken, there are no allegations to the effect that they took the photograph, sold it, published it, or otherwise exercised any control over it, to give rise to the conclusion that they "used” the photograph (see, Arrington v New York Times Co., supra, at 442-443).
*774 The case of Smith v Long Is. Jewish-Hillside Med. Center (118 AD2d 553), cited by plaintiff, does not warrant a contrary result. In Smith the court held that the publication of a deceased infant’s photograph for advertising purposes and the disclosure of confidential medical information of the infant by the defendant Medical Center "constituted invasions of the infant’s statutory rights to privacy” (118 AD2d, supra, at 555). But there the Medical Center itself published the photograph to publicize or advertise the opening of its children’s hospital. Thus, the court held, there was a "use” of the photograph for advertising purposes by the Medical Center. Here, however, the photograph was not published by Strong but by a newspaper in an article of public interest.
Although Smith (supra), a Second Department case, appears to indicate in dictum that disclosure of confidential medical information may constitute an invasion of privacy under the Civil Rights Law, the Fourth Department’s view is to the contrary (MacDonald v Clinger, 84 AD2d 482, 484). Smith does, however, demonstrate the viability of a cause of action based on the unauthorized disclosure of confidential medical information to sustain plaintiff’s fourth and fifth causes of action.
The fourth and fifth causes of action in the amended complaint assert claims against Strong and Valenti for breach of the physician-patient privilege. These claims are predicated upon the fact, for the purpose of the motion, that plaintiff consented to the taking of the photograph only after he was assured by Williams and Valenti that he would not be recognizable, and that, by permitting a recognizable picture of plaintiff to be published, plaintiff’s physician-patient privilege was violated.
The first case in New York, in an excellent opinion analyzing the foundations of a claim arising from the unauthorized disclosure of a patient’s confidences, is Doe v Roe (93 Misc 2d 201 [Stecher, J.]). More recently the analysis undertaken in Doe was adopted in MacDonald v Clinger (84 AD2d 482, supra). These cases establish that the applicable statutes and regulations* were intended to express the clear public policy *775 of this State, "prohibiting physicians, persons in allied fields, and medical institutions from disclosing without authorization of the patient, information discovered in attending the patient” (Doe v Roe, supra, at 208). Such statutes and regulations do not confine the prohibition to trials or other formal proceedings, but are also intended to have a broad and liberal construction to carry out the State’s strong policy in this important area (Doe v Roe, supra, at 208).
The theory of recovery for unauthorized disclosure is not, however, rooted solely in the statutory and regulatory protection, nor limited thereby. Rather, the physician-patient relationship itself gives rise to an implied covenant of confidence and trust which is actionable when breached (see, Rea v Pardo, 132 AD2d 442, 445). Recovery for such breach is not confined to economic loss, as in an action for breach of contract, because "the relationship contemplates an additional duty springing from but extraneous to the contract and * * * the breach of such duty is actionable as a tort” (MacDonald v Clinger, supra, at 486).
The argument of the medical defendants that they did not disclose information obtained from plaintiff in confidence fails to appreciate the proper scope of the physician-patient privilege. In construing the reach of the privilege, it has been held that the fact that a person has received treatment is as much confidential information protected by the privilege as is the nature of the treatment (see, Matter of Grand Jury Investigation of Onondaga County, 90 AD2d 990, affd 59 NY2d 130; Boddy v Parker, 45 NY2d 1000).
It is precisely that type of information which was disclosed here. Accepting the allegations in the amended complaint as true, plaintiff did not consent to the newspaper publication of a photograph in which he would be recognizable. Nor does it appear that he consented to the presence of the newspaper photographer and reporter in the disease unit waiting room. *776 By their permitted presence, especially for the purpose for which they were there, plaintiffs immunity from disclosure as a patient was violated. To the extent, therefore, that confidential information relating to plaintiff’s identity and treatment was disclosed, Strong and Valenti may be held accountable.
That the privilege encompasses a patient’s identity as well as the treatment he receives is particularly appropriate in this case. Generally, the purpose of the physician-patient privilege is to encourage proper medical treatment (see, Matter of Grand Jury Proceedings [Doe], 56 NY2d 348, 352). One of the important objectives of an AIDS clinic is to encourage people suffering from AIDS, or who suspect that they may be infected by the HIV virus, to come in for testing and treatmént without the fear of public disgrace or shame. The stigma which comes from the disclosure that a person is a patient at an AIDS clinic will deter a person from seeking treatment or testing, particularly at the early stages of the disease before symptoms develop. In light of this, it is inconceivable that the staff of the infectious disease unit would permit the presence of the news media in the waiting room, let alone encourage patients to submit to photographs. "The relationship of the parties here was one of trust and confidence out of which sprang a duty not to disclose. Defendant[s’] breach was not merely a broken contractual promise but a violation of a fiduciary responsibility to plaintiff implicit in and essential to the doctor-patient relation” (MacDonald v Clinger, 84 AD2d 482, 487, supra).
The affidavit of Hoffmann submitted by defendants does not erode the legal sufficiency of plaintiff’s action. Hoffmann states that before he took the photograph he identified himself to plaintiff as a photographer for the Democrat & Chronicle, that he took the photograph in the examining room, and that while in the examining room he heard plaintiff question Valenti about his treatment. Accordingly, the defendants claim plaintiff waived the physician-patient privilege.
When evidentiary material is considered on a motion to dismiss for failure to state a cause of action, "the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one, and, unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it * * * dismissal should not eventuate” (Guggenheimer v Ginzburg, 43 NY2d 268, 275).
*777 Here, Hoffmann’s affidavit does not negate "beyond substantial question” (Guggenheimer v Ginzburg, supra, at 275) the essential facts asserted in the amended complaint. His statement that he introduced himself as a photographer for the Democrat & Chronicle merely raises a question of fact given that the verified amended complaint is to the contrary. The fact that Hoffmann may have been present in the examination room for a period of time does not of itself result in a waiver of the privilege (see, People v Decina, 2 NY2d 133, 143-145; Richardson, Evidence § 443 [ Prince 10th ed]).
Accordingly, the medical defendants’ motion to dismiss the complaint against them is granted as to the third cause of action in the amended complaint, but denied as to the fourth and fifth causes of action. Their motion to dismiss the sixth cause of action has been rendered moot by plaintiff’s withdrawal of that claim.

 CPLR 4504 (a) provides in part: "Unless the patient waives the privilege, a person authorized to practice medicine * * * shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.”
*775 Education Law § 6509 provides: "Each of the following is professional misconduct * * * (9) Committing unprofessional conduct, as defined by the board of regents in its rules or by the commissioner in regulations approved by the board of regents”, and 8 NYCRR 29.1 (b) provides: "Unprofessional conduct * * * shall include * * * (8) revealing of personally identifiable facts, data or information obtained in a professional capacity without the prior consent of the patient”.
Public Health Law § 2803-c (3) (f) provides: "Every patient shall have the right to have privacy in treatment and * * * confidentiality in the treatment of personal and medical records”.